[No. H025691. Sixth Dist. July 16, 2004.]

THE PEOPLE, Plaintiff and Respondent, v.
JEFFERY MICHAEL HAYES, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

\*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts II., III., and IV.

## COUNSEL

Frank McCabe, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, Eric D. Share and Ann P. Wathen, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**RUSHING, P. J.**—Defendant Jeffrey Michael Hayes was sentenced to state prison after a jury found him guilty of mayhem, battery, and assault. On appeal he contends that (1) the trial court should have instructed the jury that it was a partial defense to the mayhem charge if defendant acted under a genuine but unreasonable belief that he needed to defend himself; (2) he was denied the effective assistance of counsel in that, among other things, counsel failed to object to evidence of prior misconduct; and (3) a three-year enhancement for inflicting great bodily injury must be stricken because such injury is an element of mayhem. Aside from the third point, which the People concede, we discern no reversible error. Accordingly we will affirm the judgment after striking the three-year enhancement.

## Background

At the time of the events in question, defendant was living with Melissa Munoz (later Hayes) in her Mountain View apartment. On the night of June 20, 2002, after defendant had been drinking, they had an argument. Melissa called her parent's house in Sunnyvale and told her brother Anthony Munoz she was going to "come by." Shortly thereafter Anthony called her back and offered to come and pick her up. She accepted, and Anthony's friend Eva Garcia drove Anthony and his brother David Munoz to Melissa's apartment complex. When they arrived, Ms. Garcia called Melissa's apartment on her cellular phone. Defendant answered and, according to Ms. Garcia, demanded to know " 'what the fuck' " she wanted. When he refused to put Melissa on the phone, David took the phone from Ms. Garcia and spoke to defendant. According to David, defendant demanded " 'Who the fuck is this?'," refused to put Melissa on the phone, and said things like, " 'I'll kick your ass.' "

Before long, Melissa walked toward the car, with defendant following. To David and Anthony she appeared upset, and was either crying or had recently been crying. Ms. Garcia testified that when she saw Melissa "crying hysterically," she got out of the car to see what was wrong, and let Melissa into the car by the back door. She and the Munoz brothers all testified that Melissa got into the car under her own power.

Defendant approached the car and, according to David, threw his jacket onto the ground. Anthony said defendant appeared "kind of in a rage." Both brothers got out of the car to, in David's words, "confront him, see what his problem is, why was he chasing my sister." Both testified that defendant immediately "swung at" Anthony with a closed fist. In the ensuing fight, defendant bit the tip off of David's finger. Defendant himself sustained black eyes, a swollen face, and a gash on his back.

Two months later defendant and Melissa were married. At trial Melissa was called by the prosecution and examined as a hostile witness. She testified that by the time Eva, Anthony, and David arrived to take her to her parents' house, she had decided not to go with them, but to stay with defendant. She knew defendant and Anthony did not get along, and defendant was "riled up" by his conversation with David, so in hopes of defusing the situation she "went down there to ask them to leave." Defendant said he would come down with her, but she left before he did. When she reached the car she asked Eva, Anthony, and David to leave, but they ordered her into the car, cursing and threatening to "kick [her] ass." Eva got out of the car, grabbed Melissa's sweater, and pushed her into the car while David pulled her in by the arm.

Eva got back into the car and began to drive away, but stopped when Anthony said, " 'There he is. Stop the car, stop the car.' " The brothers then got out of the car, and Anthony and defendant immediately started fighting, with neither throwing a first punch. She testified that she saw her brothers punch, kick, and knee defendant while he was helpless, but did not see defendant bite David's finger.

Defendant testified that after he spoke to Ms. Garcia on the telephone, David called, identified himself as Melissa's brother, "ask[ed] [defendant] to come downstairs," and asked him "to send Melissa out." Melissa said she was going downstairs to tell them to leave, and told defendant to "stay in the house." He told her he was going with her, because "she was upset, it was 10:30 at night and, once again, her brother asked me to come outside." She left while he was still putting on his clothes. He denied that he left the apartment intending to start a fight. However, he testified, when he arrived downstairs he "seen someone whom [he had] never seen before tugging with Melissa." He started walking fast, or perhaps running, toward the car, then to chase it as it began to pull away. Then the car backed up, and Anthony and David jumped out and started coming towards him. Anthony grabbed him by the shirt and they fell to the ground. In his view, David and Anthony were the aggressors in the ensuing melee, and he was helpless. He had no recollection of biting off David's fingertip.

Defendant called Melissa from the jail after the fight, and the conversation was recorded. During it defendant told Melissa, "Tony was such a fucking punk, he's got to have someone else fucking jump in there with him. He's on the ground, getting his ass kicked and your other fucking' . . . punk ass brother [goes] to jump in. God forbid I get out." When she said, "I told you to fucking leave them alone," he replied, "You didn't tell me they were both out there. You didn't tell me they were both going to jump in."

Defendant was charged with mayhem (Pen. Code, § 203),[1] battery with serious bodily injury (§§ 242, 243, subd. (d)), and assault by means of force likely to cause great bodily injury (§ 245, subd. (a)(1)). In conjunction with the mayhem charge, a sentence enhancement was alleged for infliction of great bodily injury. (§ 12022.7, subd. (a).) It was also alleged that defendant had sustained three strike priors (§§ 667, subds. (b)–(i), 1170.12), one five-year prior (§§ 667, subd. (a), 1170.12), and one prison prior (§ 667.5, subd. (a)).

---

[1] All further statutory references are to the Penal Code unless otherwise specified.

A jury found defendant guilty on all counts and found all enhancing allegations true. The court sentenced him to state prison for 25 years to life, plus 11 years.

This timely appeal followed.

DISCUSSION

## I. *Flannel Defense*

Defendant contends that reversal is required because of the trial court's failure to instruct the jury that it would be a partial defense to mayhem if, in inflicting the maiming injury, defendant acted on an actual, though unreasonable, belief that his conduct was necessary to defend himself from imminent danger to life or limb. Defendant contends that the court should have instructed on this point on its own motion, or if not, that his attorney rendered ineffective assistance by failing to request such an instruction. We have concluded that the doctrine asserted by defendant, variously known as the *Flannel* defense (*People v. Flannel* (1979) 25 Cal.3d 668, 679, 683 [160 Cal.Rptr. 84, 603 P.2d 1] (*Flannel*)) and "imperfect self-defense," has no application to a charge of mayhem.

In *Flannel* the court held that it is a partial defense to a charge of *murder* that the defendant killed the victim while under the honest but mistaken belief that his conduct was necessary in self-defense. The basic rationale of the doctrine is that a genuine belief in the need to defend oneself, even if unreasonable, negates the "malice aforethought" which is required for a conviction of murder. (*Flannel, supra,* 25 Cal.3d at pp. 679–680.) While this doctrine is now well established with respect to murder charges (see *People v. Blakeley* (2000) 23 Cal.4th 82, 87–88 [96 Cal.Rptr.2d 451, 999 P.2d 675]; CALJIC No. 5.17), it has been extended to few other offenses, and in particular has not been extended to mayhem.

Defendant cites the lead opinion in *People v. McKelvy* (1987) 194 Cal.App.3d 694, 702–703 [239 Cal.Rptr. 782] (*McKelvy*), in which a single justice of the Court of Appeal concluded that the *Flannel* defense was applicable to charges of mayhem. That conclusion was dictum, because the court affirmed the defendant's conviction despite the absence of a *Flannel* instruction. The lead opinion concluded that the applicability of *Flannel* to mayhem was not a sufficiently established rule of law to require instruction on the court's own motion. (*Id.* at pp. 706–707 (lead opn. of Kline, P. J.).) The other two members of the panel concurred in the result on the sole

ground that the procedural conditions triggering a duty to instruct were not present. (*Id.* at pp. 707–708 (conc. opn. of Smith, J., joined by Rouse, J.).)

Defendant urges us to adopt the analysis of the *McKelvy* lead opinion, but we do not find it persuasive. It acknowledged that mayhem does not require malice aforethought, and indeed is a general intent crime, but noted that the statute defining mayhem requires that the defendant have "acted 'maliciously,' that is, with 'a wish to vex, annoy, or injure another person, or an intent to do a wrongful act.' [Citation.]" (*McKelvy, supra,* 194 Cal.App.3d at p. 701, fn. omitted, quoting §§ 203, 7, subd. 4.)[2] It also acknowledged that "the 'malice' required for the offense of mayhem differs from the 'malice aforethought' with which *Flannel* was concerned," but concluded that "in both cases . . . the requisite state of mind is inconsistent with a genuine belief in the need for self defense." (*McKelvy,* at p. 702.) The pivotal proposition on which the case turns is that "[o]ne who truly believes there is a need for self-defense cannot be said to act with intent to 'vex, injure or annoy' and may be found guilty of no more than an assault or battery." (*Ibid.,* fn. omitted.) Thus, the court reasoned, "Where there is evidence to support such a lesser included offense, the effect of instructing the jury that an honest but unreasonable belief negates malice has a similar effect in the context of mayhem as in that of murder, reducing the severity of the offense without completely absolving the defendant of criminal responsibility." (*Id.* at pp. 702–703, fn. omitted.)

We do not agree that a belief in the necessity for self-defense can negate an "intent to vex, injure or annoy." Such an intent lacks the crucial characteristic of "malice aforethought" said in *Flannel* to justify the defense, i.e., awareness that one's conduct does not conform to the expectations of society. As the court explained, "[A] person who carefully weighs a course of action, and chooses to kill after considering reasons for and against, is normally capable of comprehending his societal duty to act within the law. 'If, *despite such awareness*, he does an act that is likely to cause serious injury or death to another, he exhibits that wanton disregard for human life or antisocial

---

[2] The lead opinion also quoted a textbook's definition of " 'malice' " as " 'import[ing] (1) the absence of all elements of justification, excuse or recognized mitigation, and (2) the presence of either (a) an actual intent to cause the particular harm which is produced or harm of the same general nature, or (b) the wanton and wilful doing of an act with awareness of a plain and strong likelihood that such harm may result.' [Citations.]" (*McKelvy, supra,* 194 Cal.App.3d at p. 702, quoting Perkins & Boyce, Criminal Law (3d ed. 1982) p. 860.) But this definition seems to permit a finding of "malice" where an absence of excuse is coupled with a slightly enhanced form of *recklessness.* If anything, such a definition would weaken the analogy to the "malice aforethought" required for murder. In any event it seems clear that the definition of "malice" in section 7, subdivision 4, must control.

motivation that constitutes malice aforethought.' (Italics added.) [Citation.] [¶] . . . No matter how the mistaken assessment [of a need for self-defense] is made, an individual cannot genuinely perceive the need to repel imminent peril or bodily injury and simultaneously be aware that society expects conformity to a different standard. Where the awareness of society's disapproval begins, an honest belief ends. It is the honest belief of imminent peril that negates malice in a case of complete self-defense; the reasonableness of the belief simply goes to the justification for the killing." (*Flannel, supra,* 25 Cal.3d at p. 679, fn. omitted, quoting *People v. Conley* (1966) 64 Cal.2d 310, 322 [49 Cal.Rptr. 815, 411 P.2d 911]; italics in *Flannel.*)

█ This passage turns on the statement that "an individual cannot genuinely perceive the need to repel imminent peril or bodily injury and simultaneously *be aware that society expects conformity to a different standard.*" (*Flannel, supra,* 25 Cal.3d at p. 679, italics added.) In other words, malice aforethought reflects or embodies a realization by the actor that his or her conduct *violates social expectations.* It is this realization that cannot be reconciled with an actor's belief that he or she is acting in self-defense, because society approves the reasonable use of force to that end.

This rationale cannot be extended to the more general concept of "malice" as defined in section 7 and incorporated in the statutory definition of mayhem. That definition connotes no element of knowing violation of social norms. It requires only intent to vex, injure, or annoy.[3] A belief that one is acting in self-defense, whether reasonable or unreasonable, has no tendency to negate the element of malice. Indeed the intent to vex, injure, or annoy may be present when one acts in *reasonable* self-defense. Such a circumstance affords a defense not because it negates the element of malice but because it *excuses or justifies* the conduct in question despite the intent to injure.

No case other than the lead opinion in *McKelvy* has held a *Flannel* instruction applicable to mayhem. The one other published case on the subject refused to follow that opinion. (*People v. Sekona* (1994) 27

---

[3] Section 7, subdivision 4, defines malice in the disjunctive to include "a wish to vex, annoy, or injure another person, *or* an intent to do a wrongful act, established either by proof or presumption of law." (Italics added.) The second definition—intent to do a *wrongful* act—has never been construed, so far as we can determine, to require knowledge by the defendant that his or her conduct violated social norms. On the contrary, it has been held that malice will be *presumed* from the act of maiming. (*People v. Nunes* (1920) 47 Cal.App. 346, 349 [190 P. 486] ["it is sufficient to prove only the commission of the act, from which the law will presume that it was done unlawfully and maliciously, unless the evidence tends to show that it was done under circumstances constituting self-defense"].)

Cal.App.4th 443 [32 Cal.Rptr.2d 606] (*Sekona*).) That decision can be read narrowly as holding only that the views in the *McKelvy* lead opinion did not reflect a "general principle of law" so as to trigger a sua sponte duty to instruct. (*Sekona, supra,* 27 Cal.App.4th at pp. 451, 457.) However the court went on to express doubts about the correctness of that opinion. (*Id.* at pp. 452–457.) As we have done, the court emphasized the " 'central' " role of the *Flannel* decision's conception of " ' "malice aforethought" ' " as the " ' "wanton disregard for human life or antisocial motivation," ' " as reflected in the killing of a person despite an opportunity to realize that doing so will violate the actor's " 'societal duty to act within the law.' " (*Id.* at p. 452, quoting *Flannel, supra,* 25 Cal.3d at pp. 679–680.) The court found the concept of malice under section 7, subdivision 4 distinguishable from that of malice aforethought. "Because the concepts are distinct and no specific intent is required to commit mayhem, the necessary intent being inferable from the types of injuries resulting from intentional acts, defendant's conduct in kicking [the victim] in the eye which resulted in [blindness in that eye] was sufficient to constitute the crime of mayhem. [Citations.] Unlike the situation in *Flannel* where the imperfect self-defense rule was grounded in part on 'both well-developed common law and in the statutory requirement of malice' aforethought [citation], mayhem involves a different requisite mental state and has no statutory history recognizing a malice aforethought element or the availability of the *Flannel* defense." (*Sekona, supra,* 27 Cal.App.4th at p. 457; see *People v. Michaels* (2002) 28 Cal.4th 486, 530 [122 Cal.Rptr.2d 285, 49 P.3d 1032] [citing *Sekona* with approval]; *People v. Park* (2003) 112 Cal.App.4th 61, 64 [4 Cal.Rptr.3d 815].)

■ In sum, whereas "malice aforethought" betokens a willingness to violate social standards of conduct, "malice" under section 7, subdivision 4 requires only an intent to injure, vex, or annoy. One who believes his or her conduct is necessary for self-defense does not manifest a willingness to violate social norms, but may very well manifest a desire to injure. It follows that the *Flannel* defense has no application to a charge of mayhem. The trial court therefore had no obligation to instruct on such a defense, and counsel was not ineffective for failing to seek such an instruction. (See also *People v. Watie* (2002) 100 Cal.App.4th 866, 882 [124 Cal.Rptr.2d 258] [expressing skepticism about applicability of *Flannel* to charge of discharging firearm at dwelling]; *People v. Atkins* (2001) 25 Cal.4th 76 [104 Cal.Rptr.2d 738, 18 P.3d 660], [holding that voluntary intoxication is not a defense to arson, despite requirement that crime be committed maliciously].)

We find additional support for this conclusion in *People v. Atkins, supra,* 25 Cal.4th 76, where the court rejected the contention that the requirement of malice in arson made voluntary intoxication a defense to such a charge.

The court wrote that "the term 'malicious,' as used in section 7, subdivision 4, does not transform an offense into a specific intent crime. [Citations.]" (*Id.* at p. 85–86.) Rather, the requirement of malice functions to ensure that the proscribed conduct was "a deliberate and intentional act, as distinguished from an accidental or unintentional" one. (*Id.* at p. 88.) A belief that one is defending oneself has no bearing on the issue of intention, and thus no tendency to negate the requirement of malice.

Other authorities confirm this view indirectly by suggesting that the essential distinction between mayhem and assault is not the actor's mental state but the *result* achieved: "If a person unlawfully strikes another, not with the specific intent to commit the crime of mayhem, and the blow so delivered results in the loss or disfigurement of a member of the body of the assaulted party or in putting out his eye, the crime is nevertheless mayhem. [Citations.]" (*People v. Nunes, supra,* 47 Cal.App. at p. 349.) So long as general criminal intent is present, the requisite malice may be inferred from the fact of the injury. (See *Goodman v. Superior Court* (1978) 84 Cal.App.3d 621, 624 [148 Cal.Rptr. 799] [mayhem "requires no specific intent to maim or disfigure, the necessary intent being inferrable from the types of injuries resulting from certain intentional acts"]; *People v. Reed* (1984) 157 Cal.App.3d 489, 492 [203 Cal.Rptr. 659] ["except where mayhem is the underlying felony in a prosecution for felony murder, the prosecution need not prove a defendant specifically intended to maim his victim; it is sufficient that a defendant engages in unlawful conduct which foreseeably results in his victim's disfigurement"]; *People v. Bryan* (1961) 190 Cal.App.2d 781, 787 [12 Cal.Rptr. 361] [instruction on battery as lesser included offense of mayhem was properly refused; "the deliberate biting off of a piece of a person's nose, spitting it out and again biting the nose, if it were not an excusable act because done in self defense, could not be anything but mayhem"].) The rule of *Flannel* is wholly inapplicable to such an offense, and the failure to instruct on that rule reflects neither error nor ineffective assistance of counsel.

II.–IV.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

*See footnote, *ante*, page 796.

DISPOSITION

The judgment is modified by striking the three-year enhancement under section 12022.7, subdivision (a). As so modified, the judgment is affirmed. The trial court is directed to prepare an amended abstract of judgment and forward a certified copy of the amended abstract to the California Department of Corrections.

Premo, J., and Elia, J., concurred.

Appellant's petition for review by the Supreme Court was denied October 13, 2004.