Filed 4/15/13

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>CESAR VALLEJO,<br><br>    Defendant and Appellant. | 2d Crim. No. B232609<br>(Super. Ct. No. 1310251)<br>(Santa Barbara County)<br>ORDER MODIFYING OPINION<br>AND DENYING REHEARING<br>[No Change in Judgment] |

THE COURT;

It is ordered that the opinion filed herein on March 21, 2013, be modified as follows:

On page 8, delete the first sentence of the second full paragraph beginning with the words "We reach" and ending with the word "issue" and insert the following in its place:

Not withstanding the aforementioned observations, we reach the merits of appellant's misconduct issue as framed. Thus, we assume that a single juror has a right to a "readback" of testimony.

Appellant's petition for rehearing is denied.

No change in judgment.

1

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>CESAR VALLEJO,<br><br>    Defendant and Appellant. | 2d Crim. No. B232609<br>(Super. Ct. No. 1312051)<br>(Santa Barbara County) |

Cesar Vallejo, a recidivist felon, is not supposed to have a firearm. Nevertheless, he possessed a .40 caliber semiautomatic pistol and unfortunately, he used it. He appeals from the judgment entered after a jury convicted him of attempted voluntary manslaughter (Pen. Code, §§ 664, 192, subd. (a)), a lesser included offense of attempted murder;[1] driving in willful or wanton disregard for safety of persons or property while fleeing from a pursuing police officer (Veh. Code, § 2800.2, subd. (a)); maliciously discharging a firearm from a motor vehicle at another person (former § 12034, subd. (c), now § 26100, subd. (c)); and possession of a firearm by a convicted felon. (§ 12021, subd. (a)(1).) As to the offenses of attempted voluntary manslaughter and discharging a firearm from a motor vehicle, the jury found true allegations that appellant had inflicted great bodily injury. (§ 12022.7, subd. (a).) As to the offense of discharging a firearm from a motor vehicle, the jury found true an allegation that appellant had personally and

---

[1] All statutory references are to the Penal Code unless otherwise stated. The jury found appellant not guilty of attempted murder.

1

intentionally discharged a firearm causing great bodily injury.  (§ 12022.53, subd. (d).)
The trial court sentenced appellant to prison for 29 years, 4 months to life.

Appellant contends that (1) the prosecutor committed prejudicial misconduct
during closing argument; (2) the trial court misinstructed the jury; (3) the trial court
erroneously denied his motion for a new trial based on misconduct by the jury foreman;
(4) as applied to him, section 12022.53, subdivision (d) violates substantive due process
and equal protection; and (5) his sentence constitutes cruel and unusual punishment under
the federal and California constitutions.  We affirm.

*People's Evidence*

After a day of construction work appellant, Thomas Gomez and Steve Swaim
went to a wedding reception and drank alcohol.  On the way home they stopped at the
Spearmint Rhino bar in Santa Maria.  They parked next to a car occupied by five persons
including the victim, Johnny Fabela.  Gomez spat onto a window of the car.  This led to a
fistfight between Gomez and the occupants of the car.  Gomez threw the first punch.
Appellant and Swaim got out of the truck.  Appellant was holding a firearm.  A woman
who had exited the car started kicking appellant.  Appellant called the woman a "bitch,"
pushed her, and ran back to the truck.  The woman testified, "Everybody was just fighting
each other."

Mike McClain was driving his van when he saw the fight.  He parked the van,
grabbed a baseball bat from under the backseat, and walked toward the fight.  McClain
hit Gomez and Swaim in the head with the bat.

Appellant, Swaim, and Gomez got inside the truck.  Swaim was in the back seat.
Gomez was in the front passenger seat.  Appellant was in the driver's seat.  Fabela ran
toward the open front passenger window.  Appellant leaned over, put his arm out the
open window, and shot Fabela in the lower chest.  Fabela started hitting Gomez through
the open window.  Fabela testified: "I seen him [appellant] pull it [the gun] out again,
cocked it, and that's when I ran off, because I didn't want to get hit again. . . . I heard
rounds passing by me as I was running off."  At least four shots were fired.

2

Appellant drove away in the truck. He was pursued by the police in a high-speed chase. At one point, appellant's estimated speed was approximately 100 to 110 miles per hour. The truck eventually crashed into a wall, and the occupants fled. Appellant was arrested later that evening.

*Defense Evidence*

Appellant testified as follows: After the fight started, he saw "all these people jumping [Gomez] and beating [Gomez] up, and [he] got out of the driver's side, . . . reached under the seat, and . . . grabbed the weapon." Appellant loaded the gun and approached the combatants. Appellant cocked the gun and said, "Leave him alone. We don't want any trouble." Appellant was suddenly attacked by two women. Appellant "walked backwards toward [his] truck and jumped in." "Somebody came out of somewhere from the side and bashed [Swaim's] head in with a bat."

Appellant was alone inside the truck. He "was terrified. [He] thought that there was [*sic*] two carloads of gang members that were going to jump us and maybe kill one of us . . . ." Appellant "reached for the weapon, put it out through the [open front passenger] window, and shot four shots into the ground." Appellant intended "to shoot some warning shots and maybe scare the people away so they could stop attacking Thomas [Gomez] and Steve Swaim." Appellant's "whole intention was for Mr. McLain to stop bashing Steve's head in with a bat." When appellant fired the shots, he did not see Fabela.

*Alleged Misconduct by Prosecutor*

Appellant contends that, during closing argument, the prosecutor committed prejudicial misconduct by repeatedly stating that appellant had "brought a gun to a fistfight." Appellant acknowledges that his counsel did not object to this characterization of his conduct. Appellant has therefore not preserved the issue for appellate review. "To preserve a claim of prosecutorial misconduct for appeal, a criminal defendant must make a timely objection, make known the basis of his objection, and ask the trial court to admonish the jury. [Citation.]" *People v. Brown* (2003) 31 Cal.4th 518, 553.)

3

Appellant argues that counsel was ineffective for "failing" to object to the prosecutor's argument. We disagree. The prosecutor's argument was fair comment upon the evidence. A " 'prosecutor is given wide latitude to vigorously argue his or her case and to make fair comment upon the evidence, including reasonable inferences or deductions that may be drawn from the evidence.' [Citation.]" (*People v. Dykes* (2009) 46 Cal.4th 731, 768.) On direct examination, appellant testified, "I seen all these people jumping him [Gomez] and beating him up, and I got out of the driver's side, I reached under the seat, and I grabbed the weapon." On cross-examination, the prosecutor asked what these people were doing to Gomez. Appellant replied, "Hitting him with their fists and pounding on him." The prosecutor later asked: "So the first thing that you grabbed when you thought somebody was being hit with fists was a gun, and you loaded it; is that right? Appellant responded, "[Y]es."

*Transferred Self-defense Instruction*

For the offense of shooting from a vehicle, appellant maintains that the trial court erroneously failed to instruct sua sponte that "a defendant is guilty of no crime if his legitimate act in self-defense results in the inadvertent injury to a third person." Appellant refers to this doctrine as "transferred self-defense." He argues that, for the offense of shooting from a vehicle, an instruction on this doctrine was necessary because the defense theory was that Fabela had been "inadvertently hit" by a shot fired by appellant in self-defense.[2] The doctrine of transferred self-defense was recognized in *People v. Mathews* (1979) 91 Cal.App.3d 1018, 1023-1024. The doctrine applies where "the act [in self-defense] is directed towards the unlawful aggressor and inadvertently results in the injury of a nonaggressive party." (*Id*., at p. 1023, fn. 2.) Here, the evidence did not support an instruction on transferred self-defense. Appellant did not testify that

---

[2] Appellant acknowledges that the doctrine is inapplicable to the attempted voluntary manslaughter count. (See *People v. Bland* (2002) 28 Cal.4th 313, 328 ["To be guilty of attempted murder [or the lesser included offense of attempted voluntary manslaughter], the defendant must intend to kill the alleged victim, not someone else].)"

4

he had intended to shoot an aggressor but had inadvertently shot Fabela instead. Appellant testified that he had shot "warning shots into the ground."

Furthermore, an instruction on transferred self-defense was not required because other instructions made clear that appellant was not guilty of shooting from a vehicle if he had acted in self-defense, irrespective of whether he had inadvertently shot an innocent bystander. The court instructed: "Self-defense is a defense to PC 12034(c) [s]hooting from a motor vehicle. The defendant is not guilty of that crime if he used force against the other person in lawful self-defense or defense of another. The defendant acted in lawful self-defense or defense of another if: [¶] 1. The defendant reasonably believed that he or Thomas Gomez or Steve Swaim was in imminent danger of suffering bodily injury or was in imminent danger of being touched unlawfully; [¶] 2. The defendant reasonably believed that the immediate use of force was necessary to defend against the danger; AND [¶] 3. The defendant used no more force than was reasonably necessary to defend against that danger."

Even if the trial court had erroneously failed to instruct sua sponte on transferred self-defense for the offense of shooting from a vehicle, the error would have been harmless because the jury found appellant guilty of the attempted voluntary manslaughter of Fabela. By so finding, the jury necessarily rejected the theory that appellant had inadvertently shot Fabela in self-defense.

*Clarifying Instruction*

The instructions on shooting from a vehicle provided that, to find appellant guilty, the jury must find that "[t]he defendant shot the firearm *at another person* who was not in a motor vehicle." (Italics added.) During deliberations, the jury asked the court: "We would like to know if 'at another person' could also be 'towards another person.' " The trial court answered: "You must rely on your ordinary common sense and your ordinary understanding of what these words mean." Appellant contends that the court's answer was erroneous: "The trial court should have either asked the jurors to clarify what they were asking about or answered the question by instructing them that in order to find appellant guilty of shooting from a motor vehicle, they had to find that appellant intended

5

to do the proscribed act, that is shoot the firearm at another person or at least in the general direction of another person with conscious disregard."

Appellant "waived the issue by failing to object and by . . . agreeing to the court's response to the jury's question[]. [Citation.]" (*People v. Turner* (2004) 34 Cal.4th 406, 437.) Defense counsel stated, "It sounds like someone's being somewhat legalistic. I mean, they're parsing. They're asking very specific nuances . . . ." Counsel continued, "I vote that the Court just require them to work off that instruction . . . ."

*Imperfect Self-defense and Shooting From a Vehicle*

The statute defining the crime of shooting from a vehicle requires proof that the defendant acted "maliciously." (Former § 12034, subd. (c), now § 26100, subd. (c).) Appellant contends that the trial court erroneously failed to instruct sua sponte "that an honest but unreasonable belief in the right to defend can negate the malice element."

In open court, appellant's counsel agreed that the doctrine of imperfect self-defense does not apply to the offense of shooting from a motor vehicle. The People argue that, in view of counsel's agreement, "any error that may have occurred was invited." " 'When a defense attorney makes a "conscious, deliberate tactical choice" to [request or] forego a particular instruction, the invited error doctrine bars an argument on appeal that the instruction was [given or] omitted in error.' [Citations.]" (*People v. McKinnon* (2011) 52 Cal.4th 610, 675.) We need not determine whether the invited error doctrine applies here because the trial court did not err.

In support of his argument that the trial court had a duty to instruct sua sponte on imperfect self-defense, appellant cites Justice Kline's lead opinion in *People v. McKelvy* (1987) 194 Cal.App.3d 694. Justice Kline concluded that, in appropriate circumstances, "a trial court should instruct sua sponte that an honest but unreasonable belief . . . in the need for self-defense negates the malice required for a conviction of mayhem." (*Id.*, at p. 704.) Appellant argues that a court should similarly instruct that such a belief negates the malice required for a conviction of shooting from a vehicle.

Justice Kline's lead opinion is not binding authority. (*People v. Quintero* (2006) 135 Cal.App.4th 1152, 1166; *People v. Hayes* (2004) 120 Cal.App.4th 796, 801-802.)

6

Two justices concurred "in the judgment only" and saw "no need for the discussion in the [lead] opinion regarding the sua sponte requirement to instruct with regard to this defense." (*People v. McKelvy*, *supra*, 194 Cal.App.3d at pp. 707-708.) Moreover, "no case other than the lead opinion in *McKelvy* has held [an imperfect self-defense] instruction applicable to mayhem." (*People v. Hayes*, *supra*, 120 Cal.App.4th at p. 804, accord, *People v. Quintero*, *supra*, 135 Cal.App.4th at p. 1166)

In *People v. Sekona* (1994) 27 Cal.App.4th 443, 451, 457, the court held that there is no duty to instruct sua sponte that an honest but unreasonable belief in the need for self-defense negates the malice required for mayhem. (See also *People v. Michaels* (2002) 28 Cal.4th 486, 530 ["courts have refused to require a trial court to instruct on its own motion . . . that imperfect self-defense is a defense to the crime of mayhem"]; *People v. Hayes*, *supra*, 120 Cal.App.4th at p. 804 [imperfect self-defense "has no application to a charge of mayhem" and the "trial court therefore had no obligation to instruct on such a defense"].) It follows that the trial court had no duty to instruct sua sponte that an honest but unreasonable belief in the need for self-defense is a defense to the crime of shooting from a vehicle.

*Alleged Misconduct by Jury Foreman*

Appellant claims that the trial court erroneously denied his motion for a new trial based on the jury foreman's misconduct. The misconduct allegedly occurred when the foreman refused a juror's request to ask for the readback of Gomez's and Fabela's testimony. The request was one of three on the same piece of paper. It was crossed through presumably by the foreman. He also crossed through a second request for the definition of "intent." He did not cross through a third request for clarification of the word, "intent," as it pertained to voluntary manslaughter. The trial court responded to the last request.

Appellant contends that the jury foreman was guilty of misconduct because he refused to honor a juror's request for a rereading of certain testimony. The premise to this contention is that an individual juror has a right to such "readback." Section 1138, in pertinent part, provides: "After the jury have retired for deliberation, if there be any

7

disagreement between them as to the testimony . . . , they must require the officer to conduct them into court.  Upon being brought into court, the information required must be given . . . ."  The plain and unambiguous language of the statute refers to the jury, not an individual juror.  (See also *People v. Jenkins* ( 2000) 22 Cal.4th 900, 1027.)  Here, the other 11 jurors did not want a "readback."[3]

We also question the characterization of the foreman's "decision" as "misconduct."  The only thing he did was honor the request of the remaining jurors not to rehear the testimony.  We think it more accurate to say that the other 11 jurors made a "decision" not to rehear the testimony.  Moreover, the use of the word "misconduct" is debatable in these circumstances.  Such word carries the connotation that something more than juror "error" was taking place.

We reach the merits of the jury foreman misconduct issue.  " 'When a party seeks a new trial based upon jury misconduct, a court must undertake a three-step inquiry.  The court must first determine whether the affidavits supporting the motion are admissible. [Citation.]  If the evidence is admissible, the court must then consider whether the facts establish misconduct. [Citation.]  Finally, assuming misconduct, the court must determine whether the misconduct was prejudicial.  [Citations.]' "  (*People v. Bryant* (2011) 191 Cal.App.4th 1457, 1467.)

---

[3]  We need not and do not purport to decide on just how many jurors are needed to require a foreman to request a rereading of the testimony.  The jury deliberation process requires that the jurors be permitted to exchange their views and if it is necessary, listen to a rereading of the testimony.  We believe that a foreman will and should, generally speaking, honor the request of a lone juror who is holding out because of a factual dispute between the jurors.  Nothing in the cited case of *People v. Burgener* (2003 29 Cal.4th 833,850, requires a jury foreman to ask for a reread based upon the lone request of a juror.  A juror has a right to bring his or her problem/request to the trial court's attention and here the trial court expressly instructed an individual juror could communicate with the trial court by giving a written request to the bailiff.  Here the lone juror did not do so. The jury's verdict  and the individual juror's indication that this was her verdict shows that she was, at least of the time if the verdict and polling, convinced that the People had met their burden of proof.  Phrased otherwise, whatever factual dispute that previously existed in the jury deliberation was resolved in favor of the People,

8

In support of his motion for a new trial, appellant submitted a transcript of the unsworn, recorded statements of juror number 3. He also submitted the sworn declaration of juror number 2, who had requested the readback of testimony. Juror number 2 declared as follows: She asked for the readback "because there was a misunderstanding in the jury room a[s] to what was testified to by the parties." Her request for the readback was written on a jury question form, but "the jury foreman crossed it out." The foreman asked the other jurors if they needed the readback, "and they said 'no'." Juror number 2 "asked for the [readback] but the other jurors told [her] the lady [the court reporter] would have to come personally to tell us. They didn't want to bother her." "Somebody on the jury said that Fabela never run [*sic*] up to the passenger's side of the car. [Juror number 2] requested his testimony to show he did run up to the passenger's side."

The trial court concluded that "the allegations of juror misconduct are not well-taken." The court continued: "I don't believe those affidavits are admissible, and if they were, they would . . . be related to the thought process, which I'm not supposed to consider."

The trial court correctly determined that the transcript of juror #3's recorded, unsworn statements was inadmissible. Unsworn statements cannot be used to establish juror misconduct. (*People v. Bryant*, *supra*, 191 Cal.App.4th at pp. 1460-1461.) Moreover, the transcript was inadmissible hearsay. (See *People v. Williams* (1988) 45 Cal.3d 1268, 1318, disapproved on another ground in *People v. Guiuan* (1989) 18 Cal.4th 558, 560-561.)

Juror number 2's sworn declaration, however, was admissible to the extent it presented "evidence of overt acts or statements that are objectively ascertainable by sight, hearing, or the other senses. [Citation.]" (*People v. Cissna* (2010) 182 Cal.App.4th 1105, 1116.) Thus, juror number 2's statements concerning her request for a rereading of testimony were admissible. But her reasons for requesting the readback of testimony were inadmissible.

9

We independently determine whether the facts establish misconduct by the foreman. (*People v. Collins* (2010) 49 Cal.4th 175, 242.) "Only if we answer that question affirmatively do we consider whether the conduct was prejudicial. [Citation.]" (*Ibid.*) A juror generally commits misconduct when the juror's act "is a direct violation of the oaths, duties, and admonitions imposed on actual or prospective jurors, such as when a juror conceals bias on voir dire, consciously receives outside information, discusses the case with nonjurors, or shares improper information with other jurors . . . . [Citations.]" (*In re Hamilton* (1999) 20 Cal.4th 273, 294.) This did not happen.

Based on the admissible evidence in juror #2's declaration, the foreman did not commit misconduct. Juror #2 requested the readback of approximately 230 pages of testimony, which would have taken several hours. The other jurors said that they did not want the readback. Presumably, they told the foreman to cross out this request by juror number 2. This is not misconduct.

*Section 12022.53, Subdivision (d) and Substantive Due Process*

For the offense of shooting from a vehicle, the jury found true an enhancement allegation that, within the meaning of section 12022.53, subdivision (d), appellant had personally and intentionally discharged a firearm from a vehicle causing great bodily injury to Fabela. This finding resulted in a consecutive prison term of 25 years to life. Appellant contends that, as applied to him, the enhancement violates substantive due process "because it reaches conduct that does not rationally relate to the purpose of the statutory provision to justify imposition of a life sentence." Appellant's contention is without merit. The purpose of the statute is to deter precisely what happened here: the intentional and unlawful discharge of a firearm from a vehicle where the discharge is likely to cause death or great bodily injury.

*Section* 12022.53, *Subdivision (d) and Equal Protection*

Section 12022.53 lists the offenses to which the enhancement applies. The offense of maliciously discharging a firearm from a vehicle is included (§ 12022.53, subd. (d)). Attempted voluntary manslaughter is not included in the statute. Appellant argues that he has been denied equal protection because the enhancement does not apply to defendants

10

convicted of attempted voluntary manslaughter who discharged a firearm after exiting a vehicle. But such defendants are not similarly situated to appellant, who discharged a firearm while inside his truck. " 'The first prerequisite to a meritorious claim under the equal protection clause is a showing that the state has adopted a classification that affects two or more *similarly situated* groups in an unequal manner.' [Citations.]" (*People v. Hofsheier* (2006) 37 Cal.4th 1185, 1199.)

Moreover, there is a rational basis for distinguishing between defendants who have discharged a firearm from a vehicle and those who have not.[4] "The Legislature can rationally decide, as a matter of public policy, to discourage the practice of carrying loaded firearms in vehicles by placing those who do so on notice that misuse of that firearm in these circumstances can lead to increased punishment. [Citations.]" (*People v. Rodriguez*, *supra*, 66 Cal.App.4th at p. 177.) Such a policy "could encourage even those carrying loaded firearms legally to be circumspect in their use (for example, not being quick to point them at anyone unless under immediate threat)." (*Id*., at pp. 177-178.) Moreover, " 'firing a gun from a motor vehicle is an especially treacherous and cowardly crime. It allows the perpetrator to take the victim by surprise and make a quick escape to avoid apprehension, as illustrated by the facts here. The Legislature could rationally have determined that the foregoing considerations justify imposing an increased sentence on the perpetrator.' [Citation.]" (*Id*., at p. 180.) In addition, " ' . . . a vehicle provides a redoubt that might facilitate the commission of criminal acts even if it is not at that moment being used for transportation.' [Citation.]" (*Ibid*.)

*Section 12022.53, Subdivision (d) and Cruel or Unusual Punishment*

Appellant contends that the trial court mistakenly believed that it lacked authority to not impose a 25-year-to-life consecutive prison term for the section 12022.53, subdivision (d) enhancement. It said that such sentence was mandatory. But the trial

---

[4] The strict scrutiny standard does not apply because section 12022.53, subdivision (d) "targets no identifiable suspect class, nor impinges upon any identifiable fundamental right. It merely increases a penalty . . . ." (*People v. Rodriguez* (1998) 66 Cal.App.4th 157, 180.)

11

court also said it would not impose such sentence if it lawfully could be done. Respondent correctly notes that this enhancement may not be stricken pursuant to section 1385. (§ 12022.53, subd. (h).) Appellant argues that the court had such authority because his sentence of 29 years, 4 months to life constitutes cruel or unusual punishment under the federal and California constitutions. Under the Eighth Amendment of the federal constitution, "the courts examine whether a punishment is grossly disproportionate to the crime." (*People v. Murray* (2012) 203 Cal.App.4th 277, 284.) "Under the California Constitution, a sentence is cruel or unusual if it is so disproportionate to the crime committed that it shocks the conscience and offends fundamental notions of human dignity." (*Id.*, at p. 285.)

Appellant did not ask the trial court for relief from this enhancement. Thus, he had forfeited the cruel and unusual punishment issue by failing to raise it in the trial court. (*People v. Norman* (2003) 109 Cal.App.4th 221, 229-230.) In any event, appellant's sentence is not disproportionate to his crime. Appellant grievously wounded Fabela by shooting him in the lower chest. Fabela suffered "a major liver injury" and "a minor kidney injury." The injuries were life threatening.

Appellant is in a poor posture to successfully prevail on this theory. As indicated at the outset of our opinion, it was unlawful for him to even possess a firearm, let alone maliciously discharge it from a vehicle. After the shooting, appellant was pursued by the police during a high-speed chase that endangered other motorists. "*Harmelin v. Michigan* (1991) 501 U.S. 957 [111 S.Ct. 2680, 115 L.Ed.2d 836], . . . upheld a sentence of LWOP [life without the possibility of parole] for possession of 672 grams of cocaine, a serious crime, but less heinous than shooting a victim [from a vehicle and causing great bodily injury]." (*People v. Rodriguez*, *supra*, 66 Cal.App.4th at p. 173.)

### Conclusion

Firearms and felons do not mix. Firearms and alcohol do not mix. Firearms and poor judgment do not mix. Here we have all three and it was a receipe for

12

disaster.  This mixture could have easily resulted in death or even multiple deaths.  The Legislature, in its desire to curb the mixing of loaded firearms and vehicles, has set an appropriate penalty.

The judgment is affirmed.

CERTIFIED FOR PUBLICATION.


`                                                            YEGAN, J.


We concur:


GILBERT, P.J.


PERREN, J.


13

James F. Iwasko, Judge

Superior Court County of Santa Barbara

_____

Linda C. Rush, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Steven D. Matthews, Supervising Deputy Attorney General, Shawn McGahey Webb, David F. Glassman, Deputy Attorneys General, for Plaintiff and Respondent.