Filed 9/17/25  P. v. Li CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

|  |  |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>　　　v.<br><br>JAMES LI,<br><br>　　　Defendant and Appellant. | B340902<br>(Los Angeles County<br>　Super. Ct. No. GA113540) |

　　　APPEAL from postconviction order of the Superior Court of Los Angeles County, Donna Hollingsworth, Judge.  Affirmed.

　　　Yisrael Gelb, under appointment by the Court of Appeal, for Defendant and Appellant.

　　　Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Noah P. Hill, Supervising Deputy Attorney General, Heidi Salerno, Deputy Attorney General, for Plaintiff and Respondent.

In August 2024, a jury convicted defendant and appellant James Li of two counts of felony vandalism (Pen. Code, § 594, subd. (a))[1] for graffitiing a residential property and damaging a garage door with an axe.  On appeal, defendant challenges the sufficiency of evidence of malicious intent and proof that for each vandalism count he caused property damage exceeding $400. (§ 594, subd. (b)(1)).  We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.    Prosecution Evidence

After purchasing the subject property around 2013, Lin Lin Yang transferred title to her ex-husband, Ziqiang Zhang, but continued to manage it.  Four tenants lived at the property.

From the time she first met defendant around 2013, Yang was aware that defendant claimed a partial ownership interest in the property.  Yang and Zhang were involved in litigation over the subject property with defendant and a man named Mr. Chui. When the litigation ended in 2022, Zhang held full ownership interest in the property.

In April 2022, tenants reported graffiti on the property's garage door, driveway, and several outdoor walls.  The graffiti, in Chinese characters, stated:  "'Victim of Fraud;'" "'Everything Comes From a Fraud;'" "'Know How to Protect Yourself;'" "'You Don't Have Enough Knowledge or You Were Cheated or You are Cheating Others;'" "'Ziqiang Zhang, are You a Cheater or Being Cheated.'"  Yang called a repairman to remove the graffiti.  When shown a receipt, Yang testified she paid $5,525 to fix the damage.

---

[1]    Subsequent unspecified references to statutes are to the Penal Code.

2

On April 21, 2022, Yang's coworker saw defendant "hacking" at the garage door with an axe. When Yang arrived at the property, she saw defendant inside a police car. While detained, defendant told an officer he had spray-painted the messages and damaged the garage door. Defendant also stated he was "owner or co-owner of the property."

Yang searched the internet to estimate how much it would cost to repair the garage door. Estimates for the door were "quite expensive. Maybe a few hundred. And there are several different kinds. And [she] also need[ed] someone to install it." Based on her search, Yang believed the repair would cost "at least 500 or 600" dollars in total.

## B.    Defense Evidence

When defendant testified at trial, he discussed the prior litigation involving the property. In 2009, Chui retained defendant (then an attorney) to represent him in the underlying property dispute. When he ran out of money and could not pay defendant, Chui executed a series of promissory notes secured by deeds of trust to his ownership interest in the property.

Defendant admitted he became a litigant of record (defendant-in-intervention) in the prior litigation. Defendant recognized that in 2016, a trial court entered a judgment reconveying deeds of trust and holding that defendant "'has no right, title, estate, interest, or lien whatsoever on the property.'"[2] He acknowledged the judgment stated that "no one" may enforce the deeds of trust "by foreclosure or any other method." In an opinion filed in 2019, the court of appeal held that defendant (the

_____

[2]    Defendant was paid $300 as a junior lienholder.

appellant) had "no protectable interest in being paid specifically from the judgment proceeds, the sale of the property."[3]

Notwithstanding the 2016 judgment and 2019 appellate decision, defendant testified he believed he could foreclose on Chui's ownership interest because Chui was dismissed from the litigation before entry of judgment. He said he consulted with two attorneys who confirmed his "interest from Mr. Chui would not be affected" by the judgment or appeal.

In 2021, defendant conducted a nonjudicial foreclosure sale of the same deed of trust identified in the 2016 judgment and conveyed Chui's interest to himself. Following the sale, several tenants agreed to pay defendant rent, but most did not.

Defendant testified that after he received no rent payments in April 2022, he believed the tenants "had been defrauded." Defendant spray painted messages on the property, "inviting them to consult an attorney to see if there had been fraud involved." Later that month, defendant used a small axe to open the garage door so he could use it to "practice" social distancing during COVID-19.

## C.  Verdict and Sentencing

By amended information, defendant was charged with two counts of vandalism causing $400 in damages or more (§ 594, subds. (a), (b)(1)) for defacing the subject property with graffiti (count 1) and damaging the garage door and side entrance with an axe (count 3). Defendant was also charged with misdemeanor battery of Yang (§ 242).

---

[3]     Following the prosecution's case-in-chief, the court admitted the 2016 judgment and 2019 court of appeal decision into evidence.

4

Following trial in August 2024, a jury acquitted defendant of battery but convicted him of both counts of felony vandalism. The court sentenced defendant to 120 days in county jail, two years of formal probation with imposition of sentence suspended, and various fines, fees, and assessments.

## DISCUSSION

### A. Admission of Court Documents

Defendant contends the court erred by admitting the 2016 judgment and the 2019 appellate decision for the truth of the matter stated in each document. The Attorney General contends defendant forfeited his contention by failing to object properly at trial. While this may be true,[4] we exercise our discretion to consider the contention on the merits. We discern no abuse of discretion in the admission of each court document or resulting prejudice. (See *People v. Martinez* (2000) 22 Cal.4th 106, 120 [admission of records reviewed for abuse of discretion].)

Defendant does not challenge the foundational requirements of each court document as a public record. (See Evid. Code, § 1280; see also *AO Alfa-Bank v. Yakovlev* (2018) 21 Cal.App.5th 189, 205 [admission of signed court file]; *People v.*

---

[4] Defendant does not challenge any statement of fact appearing in the judgment or decision. He challenges a portion of the prosecution's closing argument suggesting the jury review the documents "for the truth of what they assert." Defense counsel did not object to this argument and, despite the court's pretrial suggestion when admitting the documents for a limited purpose, did not request an instruction limiting their use. (See *In re Rocco M.* (1991) 1 Cal.App.4th 814, 819 [appellant must identify and state cognizable objection to portions of evidence he avers are inadmissible], overruled on another ground in *In re R.T.* (2017) 3 Cal.5th 622.)

*Delgado* (2008) 43 Cal.4th 1059, 1071 [official abstract of judgment].)  Instead, he avers the court erred by admitting the documents for the truth of the matters asserted.

The 2016 judgment did not include factual averments.  The judgment declared a formal ruling—that defendant had "'no right, title, estate, interest, or lien whatsoever on the property.'"  The "truth of results reached" in such document is admissible.  (*Lockley v. Law Office of Cantrell, Green, Pekich, Cruz & McCort* (2001) 91 Cal.App.4th 875, 882.)

The 2019 appellate decision did contain factual averments, but the court did not admit this document "to prove that defendant did precisely those things, . . ."  (*People v. Woodell* (1998) 17 Cal.4th 448, 460.)  The court admitted the appellate decision for its legal effect—that defendant held no ownership interest in the property and had knowledge of the prior litigation.  This too was a valid basis for admitting the decision.  (*Ibid.*; see *Poseidon Development, Inc. v. Woodland Lane Estates, LLC* (2007) 152 Cal.App.4th 1106, 1117–1118.)

In any event, any arguable error in admitting the court documents without limitation was harmless under any standard.  (See *Chapman v. California* (1967) 386 U.S. 18, 24; *People v. Watson* (1956) 46 Cal.2d 818, 837.)  The key facts appearing in the prior appellate decision were cumulative to the witness testimony discussed *ante*.[5]  Yang summarized the prior litigation and its result.  In his own testimony, defendant admitted the judgment stated he held no ownership or lien rights over the property as a result of the litigation.

---

[5]     We recite the factual background above from witness testimony.

**B.     Sufficiency of Evidence**

Defendant contends insufficient evidence supports both counts of felony vandalism.  Vandalism—maliciously defacing with graffiti, damaging or destroying real or personal property not the actor's own (§ 594, subd. (a))—may be either a felony or misdemeanor depending on the value of property destroyed.  If the value is four hundred dollars ($400) or more, vandalism is punishable as a felony.  (§ 594, subd. (b)(1).)

Defendant raises three arguments in support of this contention.  We evaluate each for substantial evidence—"'evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.'" (*People v. Edwards* (2013) 57 Cal.4th 658, 715.)  We resolve neither credibility issues nor conflicts in the evidence. (*People v. Young* (2005) 34 Cal.4th 1149, 1181 (*Young*).)  Unless testimony is "physically impossible or inherently improbable, testimony of a single witness is sufficient to support a conviction." (*Ibid.*)

   1.     *Malicious Intent*

Defendant argues there is insufficient evidence of malice because he reasonably believed he owned the property.  We disagree.

"[T]he vandalism statute itself does not require any intent besides the intent to do the proscribed acts of defacing, damaging, or destroying property, . . ." (*People v. Moore* (2018) 19 Cal.App.5th 889, 895 (*Moore*).)  "Thus, the vandalism statute defines a general intent crime with no specific knowledge or mental state requirement." (*Id.* at p. 896.)  Section 594(a) does state it applies to persons who "maliciously" graffiti, which

7

imports "a wish to vex, annoy, or injure another person, or an intent to do a wrongful act, established either by proof or presumption in law." (*Id.* at pp. 894–896; see § 7, subd. (b)(4).) However, this does not convert section 594 into a statute that requires anything more "than a general intent to willfully—as opposed to accidentally—commit the proscribed, and statutorily wrongful, act." (*Moore*, *supra*, at p. 896.)

Substantial evidence supports the finding that defendant maliciously graffitied the property. Defendant admitted he willfully, not accidentally, vandalized the property with spray paint and an axe. The graffiti consisted of messages asserting that Yang, Zhang, and perhaps tenants of the property were involved in "'Fraud,'" "'Being Cheated,'" or "'Cheating Others.'" This evidence, combined with defendant's ongoing animus toward Yang and Zhang, amply demonstrates malice.

Defendant argues he negated this showing of malice by presenting evidence that he held a good faith belief "to protect and to use what he believed to be his property." This argument does not negate the evidence indicating that he wished to annoy others or do a wrongful act. (See *People v. Hayes* (2004) 120 Cal.App.4th 796, 804; *People v. Rodarte* (2014) 223 Cal.App.4th 1158, 1171 [intent to vex, injure, or annoy "is likely to be present even when one acts in reasonable self-defense"].) We decline to weigh the evidence defendant cites in his favor, as this exercise contravenes the appropriate standard of review. (See *Young*, *supra*, 34 Cal.4th at p. 1181.)

2.      *Permission to Graffiti the Property*

Without any supporting legal authority or analysis, defendant next contends the prosecution failed to meet its burden

8

to prove the property owner (Zhang) "did not permit [defendant] to graffiti on the property." Defendant has forfeited this contention. (See *People v. Hovarter* (2008) 44 Cal.4th 983, 1029; *People v. Hardy* (1992) 2 Cal.4th 86, 150.)

We further discern no error on the merits. The jury was properly instructed on both counts of vandalism, which burdened the prosecution to prove beyond a reasonable doubt that (1) defendant maliciously graffitied or damaged real property; (2) he "did not own the property, or co-owned the property with another person;" and (3) the amount of damage caused by vandalism was $400 or more. (CALCRIM Nos. 2900, 2901.) These are accurate statements of law. (See § 594, subd. (a).)

Contrary to defendant's suggestion, section 594 "does not now and did not before [ ] make lack of permission an element of vandalism." (*In re Rudy L.* (1994) 29 Cal.App.4th 1007, 1013.) While "the actor still could prove permission—and thus lack of malice—as a defense" (*id.* at p. 1012), defendant did not request an instruction on this defense. Thus, the premise on which defendant's argument is based fails. (See *People v. Anderson* (2011) 51 Cal.4th 989, 996, 998 [pinpoint instructions used to rebut element of crime are not required *sua sponte* and are given upon request].)

3.    *Value of Damages*

Defendant contends insufficient evidence established damages exceeding $400, as required to sustain his convictions on each count of felony vandalism. Section 594 does not specify a method of valuing damages. Absent statutory guidance, courts have applied a cost-of-repair approach in restitution cases. (See *In re Kyle T.* (2017) 9 Cal.App.5th 707, 713–714 (*Kyle T.*); *In re*

9

*A.W.* (2019) 39 Cal.App.5th 941, 949.)  This approach "need not ascertain the exact dollar amount" but must have some "factual nexus" to the damage caused by the defendant.  (*Luis M. v. Superior Court* (2014) 59 Cal.4th 300, 309; see *id.* at pp. 306–307.)

At trial, Yang testified that defendant caused extensive damage on and above the property's garage door, a connecting door to the garage, side wall, and driveway.  The jury was shown various pictures of the damage.  After reviewing an invoice, Yang testified she paid $5,525 to "clear the graffiti and do the paint job."  After conducting an online search for garage repair, Yang estimated it would cost "at least 500 or 600" dollars to repair the garage door.  This testimony constitutes ample evidence from which the jury could find damages on each count exceeded $400.

Defendant argues Yang's testimony cannot be considered because the values were derived either from (1) hearsay statements in the invoice, or (2) improper secondary evidence of Yang's online searches.  (See Evid. Code, § 1523, subd. (a) ["Except as otherwise provided by statute, oral testimony is not admissible to prove the content of a writing"].)

Defendant did not object to Yang's testimony on secondary or best evidence grounds.  He has forfeited this argument on appeal.  (*People v. Barrett* (2025) 17 Cal. 5th 897, 972 [like here, defendant forfeited secondary evidence claim despite "making a 'hearsay' objection" below].)  The argument is also meritless.

Yang recalled paying $5,525 to repair the graffiti damage.  That recollection was either independent of the invoice (and therefore based on her personal knowledge), or it was refreshed by reviewing the invoice at trial.  Under either scenario, Yang's testimony was admissible.  (See Evid. Code, § 702, subd. (a);

10

*People v. Friend* (2009) 47 Cal.4th 1, 40 [refreshing recollection]; *People v. Parks* (1971) 4 Cal.3d 955, 961 [same]; see also *People v. Lee* (1990) 219 Cal.App.3d 829, 840 [hearsay may refresh witness recollection].)  Admission of the invoice in addition to Yang's testimony was thus harmless.[6]

Yang also testified it would cost "at least 500 or 600" dollars to repair the garage door damage.  Her testimony was based on online searches she had personally conducted.  Her memory "is not rendered incompetent by the fact" the estimates were calculated based upon what she saw on the Internet. (*People v. Kulwin* (1951) 102 Cal.App.2d 104, 109.)

In sum, we discern no prejudicial error in the admission of the prior judgment or appellate opinion.  We further conclude substantial evidence supports both counts of vandalism and, as a result, reject defendant's remaining claim under section 1118.1. (See *People v. Cole* (2004) 33 Cal.4th 1158, 1214; *People v. Hillhouse* (2002) 27 Cal.4th 469, 496, fn. 2.)

---

[6]     For the first time in reply, defendant argues that under *Kyle T.*, *supra*, 9 Cal.App.5th 707, Yang's repair estimate "was not exact and should be disregarded."  Defendant forfeited this argument by raising it anew in his reply brief. (*People v. Smithey* (1999) 20 Cal.4th 936, 1017, fn. 26.)  *Kyle T.* is also inapposite, as the only evidence of value in that case was a "graffiti cost removal list" that did not correlate any cost to remove the specific acts of graffiti. (*Kyle T.*, *supra*, at p. 714; see *id.* at pp. 714–715 [list provided "flat rate of $400 per incident" to remove graffiti].)

**DISPOSITION**

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


MORI, J.

We concur:


COLLINS, Acting P. J.


VAN ROOYEN, J. **

---

** Judge of the San Luis Obispo County Superior Court, assigned by the Chief Justice pursuant to Article VI, section 6, of the California Constitution.