[No. C053130. Third Dist. Sept. 7, 2007.]

THE PEOPLE, Plaintiff and Respondent, v.
DON JEFFERSON, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION*]**

---

*Pursuant to California Rules of Court, rule 8.1110, this opinion is certified for publication with the exception of parts I. and II.

## COUNSEL

Jennifer Mannix, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, and Judy Kaida, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**CANTIL-SAKAUYE, J.**—In case No. 05F07297, a jury convicted defendant Don Jefferson of robbery (Pen. Code, § 211)[1] and of misdemeanor brandishing a deadly weapon. (§ 417, subd. (a)(1).) The jury found true the special allegation that the victim of the robbery was an elderly adult over the age of 65. (§ 667.9, subd. (b).) After a court trial, the trial court found defendant had suffered a prior conviction in Illinois for attempted murder, a serious felony under section 1192.7, subdivision (c). The trial court sentenced defendant to state prison for the middle term of three years for the robbery conviction, doubled to six years under the "Three Strikes" law, with an additional five years for an alleged section 667, subdivision (a) enhancement, for a total of 11 years. The trial court stayed the section 667.9, subdivision (b), enhancement. The trial court sentenced defendant to time served for his misdemeanor brandishing conviction.

In case No. 03F00265, defendant pled no contest to possession of cocaine base (Health & Saf. Code, § 11350, subd. (a)) and was placed on probation. A petition for violation of probation filed on August 19, 2005, alleged defendant violated the terms of his probation by, among other things, the conduct alleged in case No. 05F07297. Such allegations were found true, defendant's probation was revoked, and he was sentenced to prison for a two-year middle term to run concurrently with the sentence in case No. 05F07297.

Defendant filed a timely notice of appeal in both cases, but raises issues related only to case No. 05F07297. Defendant claims (1) the evidence of force is insufficient to support his conviction of robbery; (2) the evidence is

---

[1] Undesignated statutory references are to the Penal Code.

insufficient to establish his Illinois conviction for attempted murder included all the elements required for a serious felony under section 1192.7, subdivision (c)(8) and (9); (3) the trial court's one "strike" finding should be vacated because his federal constitutional right to a jury determination was violated; and (4) the section 667.9, subdivision (b), enhancement should have been struck instead of stayed. We agree with only the last contention. We shall order the section 667.9, subdivision (b), enhancement struck and otherwise affirm the judgment.

## FACTUAL BACKGROUND

On August 17, 2005, around 1:30 p.m., 82-year-old Warren Nielsen was inside the U.S. Bank at 9th and J Streets in Sacramento. He had just left the teller and was heading outside. He was checking the $150 he had withdrawn from his bank account, getting ready to put it inside his wallet, when a man suddenly appeared alongside of him. The man took control of Nielsen's hand with one of his hands and grabbed Nielsen's money with the other hand. Nielsen testified that in the time he and the man "were fighting over the money," they went from inside the bank to outside the bank on J Street. Nielsen admitted "it wasn't much of a fight" because the man just grabbed the money, pushed Nielsen away, and ran. Nielsen said he tried to hang onto his money, but could not do so. Nielsen said the man hurt him "a little bit" because he was grabbing for the money, but he did not think the man was trying to hurt him.[2] The man just wanted the money. Nielsen raised his hand with the money up near his face and as the man grabbed the money, the man exerted some pressure on the left side of Nielsen's jaw. Nielsen said it was "just a normal part of getting the money." When asked if the man had used any more force than necessary to get the money out of Nielsen's hand, Nielsen nonresponsively answered that the man was not trying to hurt him; he just wanted the money. Nielsen believed the man used two hands; one to push his head away and the other to grab the money. Nielsen did not recall anything the man did or said before he took the money to make Nielsen afraid.

---

[2] Nielsen was asked whether he lost his footing at all. Nielsen responded: "No, he didn't hurt me." The prosecutor said, "Okay." Before the prosecutor asked any further question, Nielsen said, "Well, a little bit, because he was grabbing for the money; but he wasn't trying to hurt me, he just wanted the money." It appears Nielsen's use of the phrase "a little bit" qualified his immediately preceding statement that he was not hurt, rather than, as defendant asserts, his answer to the prosecutor's earlier question regarding his loss of footing.

Nielsen testified he tried to run after the man, but the man disappeared into a park. Security officers from the bank started chasing the man. Nielsen went back inside the bank and the bank replaced his money.

At the time of the incident, Steve Benstead was on his motorbike, riding on J Street, when a rapid movement to his left caught his attention. He turned and saw an encounter between a Caucasian man in his mid-70's or older and a young African-American man. One man ran into the other, causing a "deflection" of his body. He saw the two people rotate slightly. There were rapid hand movements consistent with something being taken. The older man used one hand, while the African-American man used both hands. The young African-American man took off running east on J Street. A large African-American man came out of a store and gave chase.

Benstead watched as the young man made a left onto 9th Street off of J Street and headed toward a park, where Benstead lost sight of him. Benstead turned left off of J Street onto 10th Street. When he saw a CHP (California Highway Patrol) bicycle officer, Benstead stopped and gave the officer a description of the incident he had witnessed and what the person involved looked like. Benstead then continued on 10th Street. After a couple of blocks, Benstead saw the large African-American man, who had been chasing the young man, running on a cross-street. Benstead turned right and when he caught up to the man, Benstead spotted the young man ahead of them. Benstead followed the young man into another park. When Benstead got close, the young man turned to face him and pulled out a knife. Benstead backed off, but continued to follow the young man at a distance. Then the CHP officer that Benstead had spoken to arrived. The officer drew his gun, ordered the young man (identified in court as defendant) to the ground, and handcuffed him. Defendant had a wad of cash and a bank receipt clutched in his left hand. The account number on the receipt belonged to Nielsen. A knife was found a short distance away from defendant.

Terence Litton, the manager of Mango's Grill on J Street, also witnessed the incident between Nielsen and defendant. He was speaking to his employees when they brought to his attention something going on out on the sidewalk outside the restaurant; someone was being robbed. Litton turned and observed through the restaurant's window a slender Black man grabbing a bag from an elderly White man. The Black man was jerking the bag away

while trying to push the elderly man off or away. Litton believed the man actually pushed the elderly man and he saw the elderly man start to go down. Litton did not know if he hit the ground because Litton instinctively ran after the Black man. Another man joined the chase. Finally, the man they were chasing was stopped by the police.

Both Litton and Benstead positively identified defendant to the police as the man they saw commit the crime. Litton told the police he witnessed a struggle and saw defendant take cash from the victim's hand.

## DISCUSSION

## I., II.*

· · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · ·

## III.

### The Trial Court's One "Strike" Finding Did Not Violate Defendant's Federal Constitutional Right To Jury Trial

Based on its finding that defendant's Illinois prior conviction for attempted murder qualified as a serious felony, the trial court doubled defendant's middle term sentence for robbery. (§§ 667, subd. (e)(1), 1170.12, subd. (c)(1).) Defendant contends the trial court's one "strike" finding violated his federal constitutional right to a jury determination of whether his prior conduct constituted such a strike.[6] Acknowledging his argument has been rejected by the California Supreme Court in *People v. Kelii* (1999) 21 Cal.4th 452 [87 Cal.Rptr.2d 674, 981 P.2d 518] and *People v. McGee* (2006) 38 Cal.4th 682 [42 Cal.Rptr.3d 899, 133 P.3d 1054] (*McGee*), defendant argues these decisions were abrogated by the United States Supreme Court decisions in *Blakely v. Washington* (2004) 542 U.S. 296 [159 L.Ed.2d 403, 124 S.Ct. 2531] and *Cunningham v. California* (2007) 549 U.S. 270 [166 L.Ed.2d 856, 127 S.Ct. 856] (*Cunningham*). We disagree.

█ In *Apprendi v. New Jersey* (2000) 530 U.S. 466 [147 L.Ed.2d 435, 120 S.Ct. 2348] (*Apprendi*) the United States Supreme Court held, recognizing its prior decision in *Almendarez-Torres v. United States* (1998) 523 U.S. 224 [140 L.Ed.2d 350, 118 S.Ct. 1219] (*Almendarez-Torres*) that: "Other than the fact of a prior conviction, any fact that increases the penalty for a crime

---

*See footnote, *ante*, page, 1381.

[6] Defendant preserved this issue for appeal by asserting below that the determination of whether his Illinois conviction was a serious prior belonged to the jury, not the court.

beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." (*Apprendi, supra,* 530 U.S. at p. 490 [147 L.Ed.2d at p. 455].)

    In *McGee, supra,* 38 Cal.4th 682, the California Supreme Court considered whether *Apprendi* compelled the conclusion that a criminal defendant has a right under the federal Constitution to have a jury examine the record of a prior criminal proceeding to determine whether the nature of the earlier conviction subjects the defendant to an increased sentence under the applicable sentencing statutes. (*Id.* at pp. 685–686.) The Supreme Court reviewed a number of its prior decisions (*id.* at pp. 692–695, 699–700), reviewed *Apprendi* (*id.* at pp. 695–699), recognized numerous cases have interpreted the *Almendarez-Torres* exception for recidivism as not being "limited simply to the bare fact of a defendant's prior conviction, but extend[ing] as well to the nature of that conviction" (*id.* at p. 704, italics omitted), and observed that under California law, the inquiry involved in determining the nature of a prior conviction "is a limited one [that] must be based upon the record of the prior criminal proceeding." (*Id.* at p. 706.) Based on the "significant difference between the nature of the inquiry and the factfinding involved in the type of sentence enhancements at issue in *Apprendi* and its progeny as compared to the nature of the inquiry involved in examining the record of a prior conviction to determine whether that conviction constitutes a qualifying prior conviction for purposes of a recidivist sentencing statute," the California Supreme Court concluded there was no federal constitutional right to a jury trial as to whether a prior conviction qualified as a serious felony under California law. (*Id.* at p. 709.) The court stated "the examination of court records pertaining to a defendant's prior conviction to determine the nature or basis of the conviction" was "a task to which *Apprendi* did not speak and 'the type of inquiry that judges traditionally perform as part of the sentencing function.' " (*Ibid.,* italics omitted.)

    In *Blakely,* the United States Supreme Court reiterated its holding in *Apprendi, supra,* 530 U.S. 466, 490 [147 L.Ed.2d 435, 455] that, " '[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.' " (*Blakely v. Washington, supra,* 542 U.S. at p. 301 [159 L.Ed.2d at p. 412].) In *Cunningham, supra,* 549 U.S. 270 [166 L.Ed.2d 856], the United States Supreme Court repeated again: "Except for a prior conviction, 'any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.' " (*Cunningham, supra,* at p. \_\_\_ [166 L.Ed.2d at p. 873].) Thus, the United States Supreme Court continues to recognize the *Almendarez-Torres* exception for recidivism. As the California

Supreme Court's analysis in *McGee, supra*, 38 Cal.4th 682, rested largely on such exception, we believe it remains good authority even after *Blakely* and *Cunningham.*

## IV.

### The Section 667.9 Enhancement Should Be Struck

The jury found true the enhancement allegation that the victim of the robbery was 65 years of age or older within the meaning of section 667.9, subdivision (b). At sentencing, the trial court stayed the imposition of the two-year section 667.9, subdivision (b), enhancement. Citing *People v. Luckett* (1996) 48 Cal.App.4th 1214 [56 Cal.Rptr.2d 37], defendant claims the trial court erred in staying, rather than striking, the enhancement. Respondent does not disagree that the trial court erred in staying the enhancement, but argues the matter should be remanded to the trial court to exercise its discretion to either impose or strike the enhancement. We shall order the enhancement struck.

Defendant filed a written motion with the trial court asking the court to strike his prior conviction pursuant to *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 [53 Cal.Rptr.2d 789, 917 P.2d 628]. The trial court heard defendant's motion at the hearing for defendant's judgment and sentencing. Defendant argued the sentencing consequences of his 22-year-old prior conviction were unfair and requested the court to strike his prior *and* to either stay or dismiss the two-year enhancement under section 667.9. Defendant pointed out he did not harm Nielsen, did not brandish or use the knife he had in his possession, and was motivated largely by his need for drugs. The trial court denied defendant's request to strike his prior, but agreed to stay the section 667.9 enhancement. The trial court sentenced defendant on his robbery to state prison "for the midterm of 3 years, doubled, for a total of 6" and then imposed the "5-year enhancement under [section] 667(a), for an aggregate of 11 years in the state prison."

█ From the record, it is clear the trial court exercised its sentencing discretion and decided defendant should be sentenced to prison in accordance with the Three Strikes law for a total prison term of 11 years, but not more. In light of this, we shall not remand for resentencing, but shall order the section 667.9 enhancement struck instead of stayed.

## DISPOSITION

The judgment is modified to strike, rather than stay, the two-year enhancement pursuant to Penal Code section 667.9, subdivision (b), as to count one. As so modified, the judgment is affirmed. The trial court is directed to prepare an amended abstract of judgment, corrected as stated above, and to forward a certified copy to the Department of Corrections and Rehabilitation.

Sims, Acting P. J., and Raye, J., concurred.

Appellant's petition for review by the Supreme Court was denied December 12, 2007, S157176. Kennard, J., was of the opinion that the petition should be granted.